UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 21-cr-238(5) (ADM/TNL) |
| Plaintiff, | |
| v. | **DEFENDANT'S REPLY TO GOVERNMENT'S POSITION REGARDING SENTENCING** |
| Raymone Johnson, Jr., | |
| Defendant. | |

Mr. Johnson and the Government disagree about two aspects of the sentencing guidelines. First, the Government objects to the two-level Mitigating Role adjustment pursuant to USSG § 3B1.2, which was applied to Mr. Johnson's offense level in the PSR. Second, the Government disagrees with Mr. Johnson's objection to the two-level enhancement for use of a minor pursuant to USSG § 3B1.4.

In the case of the latter objection, the Government states that it "believes this enhancement applies", but "it will not request an evidentiary hearing or provide proof to the Court necessary to overrule Mr. Johnson's objection." Government's Sentencing Position [ECF 230], at 10. Therefore, Mr. Johnson refers to and incorporates by reference the argument he made in his Position Regarding Sentencing on his objection to this enhancement. This Reply will address the Government's objection to the two-level Mitigating Role reduction.

The advisory Sentencing Guidelines allow for a two-level downward adjustment where "the defendant was a minor participant in any criminal activity." USSG § 3B1.2(b). Whether Mr. Johnson played only a minor role in the offense conduct is a

1

fact-bound determination based on the totality of the circumstances. *Id.* n.3(C). Courts are to consider the following non-exhaustive list of factors:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

"The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to [1] the relevant conduct for which the participant is held accountable and by measuring [2] each participant's individual acts and relative culpability against the elements of the offense." *United States v. Salazar*, 454 F.3d 843, 848 (8th Cir. 2006) (cleaned up); *United States v. Lopez-Vargas*, 457 F.3d 828, 831 (8th Cir. 2006) ("In cases in which the defendant is one of several participants in a conspiracy, he must show that his culpability was relatively minor compared to that of the other participants and that he was not deeply involved in the offense."). A minor-role adjustment is appropriate where the defendant is substantially less culpable than other participants and not "deeply involved" in the offense. *See United States v. Jones*, 25 F.4th 1077, 1080 (8th Cir. 2022) ("Someone who is 'less culpable' but still 'deeply involved' is not 'substantially less culpable than the average participant in the criminal activity.'" (citations omitted)).

2

Cases where the minor role reduction was successfully applied tend to emphasize the defendant's limited involvement in carrying out the actual commission of the offense of conviction. For instance, the Eighth Circuit affirmed application of the minor role adjustment where the defendant was implicated in a corruption scheme as a mere "passive recipient" who facilitated the commission of the tainted transactions. *See United States v. Martin*, 369 F.3d 1046, 1062 (8th Cir. 2004) (concluding that the scheme was the co-defendant's idea, the co-defendant arranged for the commission of the corrupt transactions, and the defendant was a mere passive recipient of the free services). A mitigating role adjustment under § 3B1.2 was applied where the defendant knew of the likely fraud and used it to his benefit because he had little to no involvement in its day-to-day operations. *See United States v. Behr*, 33 F.3d 1033, 1035, 1037 (8th Cir. 1994) (affirming three-level downward adjustment where the defendant used knowledge of company's misconduct to procure fraudulent sales from investors for his own benefit).

District courts recognize that "minor role reductions" apply "to someone who was involved in 'a one time, one place' type of transaction." *See United States v. Barnes*, 481 F. App'x 276, 280 (8th Cir. 2012) (quoting bench ruling of D.J. Judge Patrick Schiltz). The Eighth Circuit has also applied the minor participant adjustment to defendants who were implicated in a larger conspiracy but whose actual participation in the offense conduct was far more limited to discrete or isolated events. *See United States v. Spotted Elk*, 548 F.3d 641, 671 (8th Cir. 2008) (affirming two-level minor role reduction to defendant "who had participated in the [drug] conspiracy primarily by selling at the retail level, but . . . repackaged cocaine for sale once").

The evidence in this case shows that Mr. Johnson was involved in a single transaction involving a counterfeit $100 bill that took place in June 2021 in Brooklyn Center at the 50's Grill. While, in his Plea Agreement, Mr. Johnson did not dispute the Government's claim that the conspiracy lasted at least a couple of years, he professed that only one specific "overt act"—the 50's Grill incident--joined him to the counterfeiting conspiracy. Mr. Johnson was not involved in the creation of the counterfeit money. He did not source it and provide it to others. He made a mistake on a single occasion, when he was out for a ride with his cousin, Jeremiah Johnson, who was an average participant in the offense.

To inflate Mr. Johnson's participation, the Government has pointed to an "occurrence" in 2015 involving Mr. Johnson and his cousin, Jeremiah, where counterfeit bills were allegedly passed in another state. No charges against Mr. Johnson were brought and the Government itself admits that it is well outside the date of the charged conspiracy. This alleged incident establishes nothing about Mr. Johnson's involvement in the charged conspiracy and the Court should not consider it. The Government also claims that statements from two witnesses show that he had "pervasive" involvement in the conspiracy. One of those witnesses simply identified Mr. Johnson in a photo array; the other mentioned to investigators that they thought he was "involved" in the counterfeiting.

None of these suggestions comes even close to showing that Mr. Johnson's involvement was average, much less deep or pervasive. He was substantially less involved than many of his codefendants. The PSR was correct when it applied the downward adjustment for a Mitigating Role.

|  |  |
|---|---|
| Dated:  January 4, 2023 | *s/ Lousene M. Hoppe* <br> Lousene M. Hoppe <br> Attorney ID No. 387171 <br> Fredrikson & Byron, P.A. <br> 200 South Sixth Street <br> Suite 4000 <br> Minneapolis, MN 55402 <br> Phone: 612-492-7402 <br> Email:   lhoppe@fredlaw.com <br><br> **ATTORNEY FOR DEFENDANT RAYMONE JOHNSON, JR.** |

78029701 v1